FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2007 APR 25 PM 3: 00

UNITED STATES DISTRICT COURT     LORETTA G. WHYTE
CLERK

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| PERTAINS TO: SEVERED MASS JOINDER CASES | * | No. 05-4182 |
| | * | |
| *severed from Abadie, 06-5164* | * | SECTION "K" (2) |
| | * | |
| DON MILLER | * | **07-2597** |
| Plaintiff | * | |
| | * | CIVIL ACTION |
| VERSUS | * | **SECT. K  MAG.2** |
| | * | |
| STATE FARM FIRE and CASUALTY COMPANY | * | |
| Defendant | * | SECTION "K" () |
| ************************************************** | * | |

### SUPPLEMENTAL AND AMENDING COMPLAINT
### PURSUANT TO ORDER OF SEVERANCE DATED MARCH 27, 2007

**NOW INTO COURT,** through undersigned counsel, comes Don Miller , who

respectfully supplements and amends his or her Complaint as follows:

I.

Made defendant herein is:

1.     STATE FARM FIRE AND CASUALTY COMPANY, (hereinafter "State Farm"),

a foreign insurer authorized to do and doing business the State of Louisiana.

II.

–1–

Fee_____
_I_ Process _CR Send_
X  Dktd_____
___ CtRmDep_____
___ Doc. No._____

This Court has personal jurisdiction over State Farm because it was transacting business in this District within the relevant time periods by way of selling insurance policies to Don Miller .

III.

Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this District and State Farm regularly transacts business in this District.

IV.

Don Miller  seeks compensatory and punitive damages from State Farm as a result of its wrongful conduct, as well as declaratory relief by the Court that:

a.      The first efficient proximate cause of the losses suffered by Don Miller  on August 29, 2005 was "windstorm," a covered peril under the insurance policy purchased by Don Miller , thereby rendering any subsequent impact from water released by the levee and/or levee wall failures irrelevant to coverage afforded by the insurance policy;

b.      The second efficient proximate cause of the losses resulting from water entering the City of New Orleans and surrounding parishes on August 29, 2005 from the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere were *acts of negligence*, standard covered perils in State Farm's homeowner insurance policy;

c.      The third efficient proximate cause of the losses resulting from water entering the City of New Orleans and surrounding parishes on August 29, 2005 was "storm

surge," a known meteorological phenomenon that is not specifically excluded by

State Farm's insurance policy, in contrast to other insurance policies available in

the market, thereby rendering any damage caused by "storm surge" and resulting

*water pressure covered under the policy;*

d.    The breaking or failure of levees or boundaries of lakes, reservoirs, rivers,

streams, or other bodies of water was a peril not specifically excluded by State

Farm's insurance policy, in contrast to other insurance policies available in the

market; and

e.    The damage caused by water entering the City of New Orleans and surrounding

parishes from Hurricane Katrina beginning on August 29, 2005, due to the

breaches in the levee walls along the 17th Street Canal, London Avenue Canal,

Industrial Canal, and elsewhere neither falls within the common and approved

*definition of "flood," nor within the subject insurance policy's exclusions of*

"flood."

## **FACTUAL BACKGROUND**

### V.

At all pertinent times, Don Miller  owned immovable property with improvements and

personal property at 7712 Reindeer St in New Orleans, Louisiana.

### VI.

Don Miller purchased a homeowner's insurance policy (the "All Risk Policy") from State

Farm.

### VII.

–3–

Don Miller  purchased their policy with the reasonable expectation that they would be able to recover for any and all losses caused by hurricanes, including any and all damage proximately and efficiently caused by hurricane wind, and "storm surge" proximately caused by hurricane wind.

VIII.

At no time did State Farm specifically exclude from coverage the breaking or failure of boundaries and levees of lakes, rivers, streams, or other bodies of water, despite State Farm's advanced knowledge of the fragility of the New Orleans area levee systems and the topography of the Greater New Orleans Metropolitan Area.

IX.

Don Miller  trusted and relied upon State Farm's representations that the subject policy would cover any damage caused by a hurricane and, thus, reasonably believed that their Policy *would cover any and all hurricane damage.*

X.

The amount of insurance coverage for the Don Miller  was based on the estimated cost of replacing the home, an amount established by State Farm or an agent authorized by them to determine the replacement cost of each individual home.

XI.

At all times relevant hereto, Don Miller   made timely payment of the premiums due on their All Risk Policy, which was in full force and effect at the time of their loss.

XII.

At 6:10 a.m. on August 29, 2005, Hurricane Katrina made landfall near Grande Isle,

–4–

Louisiana as a Category 4 hurricane, and then made a second landfall a short time later near the Louisiana-Mississippi border, the eye of the storm passing just east of the City of New Orleans at approximately 9:00 a.m.

XIII.

As a result of the effects of Hurricane Katrina on the New Orleans region, Don Miller had substantial damage to their home and the contents of their home were destroyed.

XIV.

Based upon information and belief, Don Miller  avers that any damages attributable to the levee failures are the result of improper or negligent design, construction, maintenance of the levees by various third parties and/ or third party negligence.

XV.

Upon returning to the city and evaluating the damage associated with Hurricane Katrina and it's aftermath, Don Miller  instituted a claim for loss pursuant to their insurance policy.

XVI.

Despite presenting satisfactory proofs of loss for damage sustained as a result of the hurricane, State Farm continuously utilized dilatory tactics leading to substantial delays in adjusting Don Miller  claims.

XVII.

Additionally, State Farm refused to adequately adjust the claims and make payment of the amount of the claim, despite having been presented with satisfactory proofs of loss for damage sustained as a result of the hurricane.

**COUNT I**

–5–

## DECLARATORY JUDGMENT

### XVIII.

Don Miller repeats and re-alleges the allegations of the foregoing paragraphs as if the same were set forth at length herein.

### XIX.

An actual controversy exists between Don Miller and State Farm concerning State Farm's duty to indemnify Don Miller for their losses.

### XX.

Consequently, under the circumstances, it is necessary and appropriate for the Court to declare Don Miller and State Farm's rights and duties under the Policy pursuant to 28 U.S.C. § 2201.

### XXI.

The losses suffered by Don Miller as a result of Hurricane Katrina are covered losses under the respective All Risk Policy.

### XXII.

Don Miller has given timely notification to State Farm and made timely demands in writing that State Farm cover Don Miller losses.

### XXIII.

State Farm is obligated by the terms and conditions of their All Risk Policy to indemnify Don Miller for their losses.

### XXXIV.

State Farm has refused to indemnify Don Miller for their losses and have denied coverage, in whole or in part, for the losses.

### XXV.

Thus, Don Miller  is entitled to a declaratory judgment that the damages they suffered are covered losses under the All Risk Policy.

XXVI.

Specifically, Don Miller  losses were caused by covered perils, the efficient causes of their losses were covered perils and the efficient and proximate causes of loss were covered perils.

XXVII.

Further, to give the "flood" exclusions a broad reading and thus disallow the coverage for the damages arising from this catastrophic disaster, which occurred despite the vast and expansive levees existing in the greater New Orleans area, would contravene the very purpose of homeowner's policies.

XXVIII.

The reasonable expectations of Louisiana policyholders is that "flood" encompasses overflowing of the Mississippi River or other body of water, accumulation of surface water due to heavy rainfalls, or similar phenomena, but not the unnatural event of the failure of virtually all man-made water containment structure surrounding the New Orleans Metropolitan Area due to negligent conduct beyond the policyholders' control.

XXIX.

Finally, Don Miller  should not be deprived of the coverage of the All Risk Policy where State Farm has drafted vague, ambiguous and unclear limitations on coverage, thereby violating the rule that exclusions must be clearly and explicitly drafted. If so intended, and in contrast to other insurance policies available in the market, State Farm should have specifically excluded hurricane damage and/or the failure of levees as the most probable perils for the New Orleans Metropolitan Area.  Instead, State Farm decided to sell the same comprehensive All-Risk Homeowners Insurance

Policy that they sell in the "high and dry" plains throughout the United States.

XXX.

While State Farm may continue to make investment income during the course of any protracted legal proceedings, Don Miller , on the other hand, has little recourse but to sit idly by awaiting a decision, all the while being unable to begin reconstruction or renovation of their homes until they have the money to pay contractors.

XXXI.

As a result, without resolution of this issue by declaratory judgment, Don Miller , in most instances, will be unable to remedy the damages they fully expected were covered by their All Risk Policy.

**WHEREFORE**, Don Miller  respectfully requests that this Court enter a declaratory judgment in their favor and against State Farm as to Count I, ordering and decreeing that:

(1)    The first efficient proximate cause of the losses suffered by Don Miller on August 29, 2005 was "windstorm," a covered peril under the insurance policy purchased by Don Miller , thereby rendering any subsequent impact from water released by the levee and/or levee wall failures irrelevant to coverage afforded by the insurance policy;

(2)    The second efficient proximate cause of the losses resulting from water entering the City of New Orleans and adjoining parishes on August 29, 2005 from the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere, were ***acts of negligence***, standard covered perils in State Farm's homeowners insurance policy;

(3)    The third efficient proximate cause of the losses resulting from water entering the City of New Orleans and adjoining parishes on August 29, 2005 was "storm surge," a known meteorological phenomenon that is not specifically excluded by State Farm's insurance policy, in

–8–

contrast to other insurance policies available in the market, thereby rendering any damage caused by "storm surge" and resulting water pressure covered under the policies;

(4)    The breaking or failure of boundaries of lakes, reservoirs, rivers, streams, or other bodies of water was a peril not specifically excluded by State Farm's insurance policy, in contrast to other insurance policies available in the market; and

(5)    The damage caused by water entering the City of New Orleans and adjoining parishes from Hurricane Katrina beginning on August 29, 2005, due to the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere, neither falls within the common and approved definition of "flood," nor within the subject insurance policy's exclusions of "flood."

## COUNT II.

## STATE FARM FAILED TO PROPERLY ADVISE DON MILLER OF THE AVAILABILITY OF FLOOD INSURANCE

### XXXII.

In 1956 Congress enacted the Federal Flood Insurance Act. The National Flood Insurance Act, as amended in 1968, is now the seminal authority for the current National Flood Insurance Program ("NFIP"). Congress created the NFIP to provide insurance coverage for property located in flood plain areas where the risk of certain natural or seasonal flooding is increased.

### XXXIII.

The NFIP provides a minimum level of insurance for the peril of natural or seasonal flooding with a cap of $250,000 per property.  42 U.S.C. § 4121(a)(1).

### XXXIV.

Since the inception of the NFIP, the insurance industry has been willing to sell insurance in excess to the minimal level of coverage provided by the NFIP. Thus, the availability of additional

flood insurance was known to and sold by State Farm at the time it sold its All Risk Policy to Don Miller.

### XXXV.

Despite this knowledge, at no time prior to August 29, 2005 did State Farm advise Don Miller that - contrary to their representations - their true intent was not to cover damage or loss caused by hurricanes that may involve damage, in part, from water beyond the NFIP limit, and that their home may accordingly be grossly under-insured, or that additional coverage could be purchased in excess of the NFIP limit.

### XXXVI.

Don Miller was not adequately advised of the scope and availability of flood insurance under the National Flood Insurance Program by State Farm.

## COUNT III

## BREACH OF CONTRACT

### XXXVII.

Don Miller repeats and re-alleges the allegations of the foregoing paragraphs as if the same were set forth at length herein.

### XXXVIII.

A valid contract exists between Don Miller and State Farm in the form of the All Risk Policy, which obligates State Farm to cover the loss of or damage to a dwelling and personal property therein which is caused by wind or windstorms.

### XXXIX.

Don Miller paid all premiums due under their All Risk Policy and materially performed their obligations under that policy.

### XL.

Upon proper and repeated demands by Don Miller , State Farm has refused to meet its obligations under the All Risk Policy and refused to pay the full extent of damages sustained by Don Miller  home as a result of being destroyed or damaged by the efficient proximate cause of windstorms.

XLI.

As a direct and proximate result of the breach by State Farm, Don Miller  was deprived of the benefit of insurance coverage for which State Farm was paid substantial premiums and, accordingly, Don Miller  has suffered substantial damages.

XLII.

Don Miller  avers that State Farm negligently failed to exercise reasonable care in fulfilling its duties to Don Miller , more particularly, but not limited to:

1). Failing to initiate loss adjustment of a claim after notification of loss;
2). Failing to promptly and adequately adjust the claims presented;
3). Provide an initial tender of payment at prices falling below regional commercial standards;
4). Failing to make complete payment after receipt of satisfactory proofs of loss of that claim;
5). Failing to fulfill the terms and conditions of the insurance contract at issue;
6). Failing to exercise reasonable care in the supervision of subordinates and employees;
7). Failing to exercise reasonable care;
8). Breach of express and implied warranties; and
9). Any and all other acts of negligence to be proven at trial.

XLIII.

As a result of the above referenced conduct, Don Miller  has sustained damages in the following non exclusive ways:

1. loss of personal property and property value;
2. inconvenience;

–11–

3. *loss of use of property;*

4. loss of income;

5. loss of profits;

6. loss of business opportunity;

7. as well as other damages to be proven at trial.

**WHEREFORE,** Don Miller demands judgment against State Farm for all amounts due under the All Risk Policy, other compensatory damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

## COUNT IV

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### XLIV.

Don Miller repeats and re-alleges the allegations of the foregoing paragraphs as if the same were set forth at length herein.

### XLV.

*By selling its All Risk Policy to Don Miller , State Farm assumed a duty of good faith and* fair dealing to Don Miller , including an obligation to promptly indemnify Don Miller for the losses.

### XLVI.

State Farm has failed to follow Louisiana's long-standing efficient proximate cause doctrine and has instead adopted an industry-wide approach to denying valid claims for inappropriate reasons.

### XLVII.

State Farm has continuously denied coverage for Don Miller losses by equating the efficient proximate cause of windstorm and the negligent design, construction and maintenance of the New Orleans area levees and/or third party negligence with <u>flooding</u>.

### XLVIII.

State Farm has continuously denied coverage for claims by equating "storm surge" with flood, thereby improperly expanding the flood exclusion and ignoring the reasonable expectation of

Louisiana policy holders.

### XLIX.

Moreover, State Farm directed its adjusters to follow specific "guidelines" whereby the adjusters would arbitrarily, capriciously and without probable cause, find a nearby waterline and apply it to Don Miller property in order to deny full payment of Don Miller claims.

### L.

State Farm further directed its adjusters to ignore all other information and evidence and, instead, to use only the procedure and guidelines mandated by them, specifically; the arbitrary application of any nearby waterline to Don Miller property.

### LI.

By engaging in all of the conduct above, State Farm lacks an arguable or legitimate basis for refusing to pay the Don Miller claims

### LII.

In directing its adjusters to undertake the ongoing practice of ignoring any information or evidence other than the arbitrary and capricious application of any nearby waterline, State Farm violated La. Rev. Stat. Ann. § 658.2(A)(1) which provides that "[n]o insurer shall use the floodwater mark on a covered structure without considering other evidence, when determining whether a loss is covered or not covered under a homeowners' insurance policy."

### LIII.

By engaging in the conduct described above, State Farm has violated the duties of good faith and fair dealing owed to Don Miller .

### LIV.

Moreover, by engaging in the conduct above, State Farm's persistent and systematic actions and failures to act were done with malice and gross negligence and with a disregard for Don Miller rights so as to warrant the imposition of punitive damages against State Farm.

### LV.

Additionally, that despite the fact that settlement negotiations have taken place, Don Miller

contends that State Farm has been arbitrary and capricious in the adjustment and handling of this claim pursuant to Louisiana Revised Statute 22:658.

### LVI.

Don Miller further contends that the actions of State Farm were arbitrary and capricious and violated the duty to deal with Don Miller in good faith in failing to make a reasonable effort to settle its claim pursuant to La. R.S. 22:1220.

### LVII.

Pursuant to La. Rev. Stat. Ann. § 22:1220(A), State Farm owes Don Miller a "duty of good faith and fair dealing" as well as a duty to "adjust claims fairly and promptly and to make a reasonable effort to settle claims" with Don Miller .

### LVIII.

La. Rev. Stat. Ann. § 22:1220(B) prohibits State Farm from, inter alia, "[m]isrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue" and "[f]ailing to pay the amount of any claim . . . when such failure is arbitrary, capricious or without probable cause."

### LIX.

State Farm has misrepresented the coverage afforded by its insurance policy provisions by wrongfully and without a legitimate basis seeking to have the "flood" exclusions given a broad reading in an effort to disallow coverage for the damages arising from Hurricane Katrina.

### LX.

As such, State Farm has breached known duties through a motive of self interest and/or ill will without having a reasonable basis to deny these claims, instead denying claims in an arbitrary and capricious manner and without probable cause.

### LXI.

By engaging in all of the above conduct, State Farm has engaged in bad faith conduct in violation of La. Rev. Stat. Ann. § 22:1220.

### LXII.

As a direct and proximate result of the State Farm's bad faith actions, Don Miller has

suffered, and will continue to suffer, substantial damages.

LXIII.

Don Miller hereby demands trial by jury on all issues so triable.

**WHEREFORE**, Don Miller prays that the defendant State Farm Fire and Casualty Company be duly served and cited to appear and answer the Supplemental and Amending Complaint Pursuant to Order of Severance dated March 27, 2007, and for trial by jury; and that after due proceedings, that there be judgment in favor of Don Miller and against State Farm Fire and Casualty Company for damages as are reasonable in the premises with legal interest thereon from date of judicial demand and for all costs of these proceedings, and all general and equitable relief deemed proper by this Honorable Court.

Respectfully submitted:

BY: _____

JOSEPH M. BRUNO, (#3604)
L. SCOTT JOANEN (#21431)
BRUNO & BRUNO, LLP
855 Baronne Street
New Orleans, LA  70113
Telephone: (504) 525-1335
Facsimile:         (504)         581-1493